UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Ronald Falit,<br>    *Plaintiff*,<br><br>    *v.*<br><br>Provident Life and Accident Insurance Company,<br>    *Defendant.* | Civil No. 3:09cv1593 (JBA)<br><br><br><br>July 7, 2010 |

RULING ON DEFENDANT'S MOTION TO DISMISS [Doc. # 22]

Plaintiff Ronald Falit brought suit against Defendant Provident Life and Accident Insurance Company ("Provident") in connection with Provident's denial of his claim for disability benefits. Falit brings a four–count complaint against Provident, raising claims of (1) breach of contract, (2) violation of CUTPA/CUIPA,[1] (3) reckless violation of CUTPA/CUIPA, and (4) intentional infliction of emotional distress ("IIED").  Provident has moved to dismiss Counts Two, Three, and Four.  For the reasons that follow, Provident's motion will be granted.

I.    Facts

Falit, a physician, alleges that Provident[2] issued to him a disability policy providing a "monthly benefit for total disability of $3120 per month starting on the 61st day of the period of total disability." (3d Am. Compl. [Doc. # 21] at ¶ 4.)  On November 7, 2006, while assisting a patient, Plaintiff "lifted the patient up and in doing so . . . injured [his] back[]." (*Id.* at ¶ 8.) Falit

---

[1] See Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq.*; Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn. Gen. Stat. § 38a-815 *et seq.*

[2] The state–court suit also named UnumProvident Insurance Company and UnumProvident, entities that Provident, in its Notice of Removal, asserted do not exist.  Provident is now the only named defendant.  *See* 3d Am. Compl. [Doc. # 21].

was diagnosed as being totally disabled, and "was awarded workers compensation benefits." (*Id.* at ¶¶ 9–10.)  Shortly thereafter he submitted to Provident a claim for total disability benefits (*id.* at ¶ 11), and in the months that followed—first on February 19, 2007, and then on April 9, 2007—Falit submitted two medical reports to Provident documenting this claim (*id.* at ¶¶ 12, 13).  Provident denied Plaintiff's claim for benefits, and Plaintiff now alleges that the claims "have not been paid," "were not paid in a timely fashion," "were not approved," "were not approved in a timely fashion," and "were wrongfully denied."  Provident apparently denied the claim on the basis that Plaintiff had a sickness rather than an injury and total disability.  (*See id.* at ¶ 15.)

Count Two of the Third Amended Complaint alleges that Provident engages, as a general business practice, in conduct rendered unlawful by CUIPA.  (*See* 3d Am. Compl. at ¶¶ 19–22.)  Count Three alleges that Provident's violation of CUTPA/CUIPA was "willful, wanton and reckless in that [notwithstanding that] in the past it had been subject to various regulatory actions as well as civil claims regarding the violation of the aforementioned matters in other jurisdictions and before other regulatory agencies they continued to perform such acts." (*Id.* at ¶¶ 23–24.)  Count Four alleges that "Provident also acted recklessly and willfully as to the Plaintiffs" in inflicting "emotional distress."  (*See id.* at ¶¶ 25–26.)

II.  Standard

The Federal Rules of Civil Procedure requires that a complaint "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2).  Provident's motion to dismiss challenges the Amended Complaint for "failure to state a claim upon

2

which relief can be granted." Fed. R. Civ. P. 12(b)(6). Summarizing the two recent Supreme Court cases addressing Rules 8(a)(2) and 12(b)(6), *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), the Second Circuit has explained that "[a]s a matter of substance, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kuck v. Danaher*, 600 F.3d 159, 162–63 (2d Cir. 2010) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

III.   Discussion

Provident argues that Plaintiff's CUTPA/CUIPA claims must be dismissed in the absence of non–conclusory factual allegations that it engaged, as a general business practice, in conduct similar to its conduct vis-à-vis him. Provident further argues that the Amended Complaint contains no allegations of extreme and outrageous conduct necessary to sustain a claim of intentional infliction of emotional distress.

Plaintiff's nine–page opposition includes no discussion or citation to authority regarding the law relating to CUTPA/CUIPA or IIED. In it, he relies on a number of cases that pre–date *Iqbal* and *Twombly*; argues that his case should be decided upon the evidence rather than upon the pleadings; and, citing a 1962 Supreme Court antitrust summary–judgment case, asserts that Rule 8(a)(2) standards are different for complex cases such as antitrust and CUTPA than for simple cases, and therefore these cases are better left for summary judgment or trial than disposed of on motions to

dismiss.[3]   Attached to Plaintiff's opposition memorandum are three documents: (1) an attorney–produced chart of Falit's interactions with Provident, which allegedly show multiple instances of unfair conduct on Provident's part in dealing with Falit; (2) certain correspondence among and regarding Falit, his physicians, Provident, and Provident's physicians; and (3) a 24–page printout from the Maine Bureau of Insurance Website, not referenced in the Amended Complaint, that publicizes and recites a November 2004 Regulatory Settlement Agreement ("RSA") between Provident and government regulatory entities that set terms of Provident's regulatory settlement with these regulators to implement "a plan of corrective action" (Ex. B ¶ 4) without Provident needing to "admit, deny or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been or could have been alleged against it" (*id.* ¶ 12).

A.   Counts Two and Three: CUTPA/CUIPA

It is well settled that a denial of a single claim cannot form the basis of a CUTPA/CUIPA claim, even if the denial involved multiple unfair acts.  *See Lees v. Middlesex Ins. Co.*, 229 Conn. 842,

---

[3] Plaintiff cites *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464 (1962), which reversed a grant of summary judgment to a defendant on claims brought under the Sherman Act. It explained that "we cannot say on this record that 'it is quite clear what the truth is.' . . . We believe that summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot."  *Id.* at 472–73.  *Poller* did not address motions to dismiss, and *Iqbal* expressly rejected the contention that the Supreme Court's "decision in *Twombly* should be limited to pleadings made in the context of an antitrust dispute."  *Iqbal*, 129 S. Ct. at 1953.  In short, *Poller* is of no help to Plaintiff, even assuming that it remains good law.  *But see Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 747 (3d Cir. 1996) (holding that *Poller*'s "'special standard'" for antitrust cases "was abandoned" in *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468–69 (1992)).

849 (1994) ("the defendant's alleged improper conduct in the handling of a single insurance claim, without any evidence of misconduct by the defendant in the processing of any other claim, does not rise to the level of a 'general business practice' as required by [CUIPA]"); *see also, e.g.*, *Martin v. Am. Equity Ins. Co.*, 185 F. Supp. 2d 162, 168 (D. Conn. 2002) ("the law in Connecticut is clear that CUIPA . . . does not cover isolated instances of insurer misconduct" (citing *Lees*, 229 Conn. at 849)). Provident argues that the allegations do not support a finding of a "general business practice" or a finding of an unfair practice.

The Court cannot consider the RSA in resolving the motion to dismiss because it is not referenced in or integral to the Amended Complaint, *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 & n.4 (2d Cir. 2002), and the Court declines to convert Provident's motion into a motion for summary judgment, *see* Fed. R. Civ. P. 12(d), at this preliminary stage. Plaintiff's allegation that Provident "frequently ha[s] committed [CUIPA–violating] acts and in so doing [is] following a general business practice" (3d Am. Compl. at ¶ 21) is "a formulaic recitation of [an] element[] of [the] cause of action," *Iqbal*, 129 S. Ct. at 1949, and the Amended Complaint contains no factual matter that renders plausible his claim that Provident has engaged in a general business practice of conduct similar to the conduct that Falit alleges it took against him. Absent allegations of fact showing a general business practice, Falit's CUTPA/CUIPA claim must fail.

  B. Count Four: Intentional Infliction of Emotional Distress

An allegation of reckless or willful infliction of emotional distress, which is how Plaintiff has captioned Count Four, is a claim of intentional infliction of emotional distress. *See Myslow v. New*

*Milford School Dist.*, No. 3:03cv496(MRK), 2006 WL 473735, *17 (D. Conn. Feb. 28, 2006); *see also Montanaro v. Baron*, No. CV065006991, 2008 WL 1798528, *4–*5 (Conn. Super. Ct. Mar. 28, 2008). In Connecticut the tort of intentional infliction of emotional distress ("IIED") is comprised of four elements:

> "It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe."

*Appleton v. Board of Educ. of Town of Stonington*, 254 Conn. 205, 210 (2000) (quoting *Petyan v. Ellis*, 200 Conn. 243, 253 (1986)). Whether an actor's conduct is "extreme and outrageous" is an issue for the Court in the first instance and a factual question for the jury "[o]nly where reasonable minds disagree" as to whether "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 210–11.

Provident's argument, which Plaintiff has not addressed, is that the Amended Complaint contains no allegation of conduct that is sufficient extreme or outrageous to support an IIED claim. The Court agrees. No allegation even hints at extreme or outrageous conduct by Provident intended to inflict emotional distress on Falit. Provident denied Falit's claim on a basis that Falit believes to be erroneous: that Falit was in fact not totally disabled. Even if Provident were wrong, and breached its contract with Falit, it comes nowhere near showing the kind of extreme and outrageous conduct necessary to support an IIED claim. *See also Ormsby v. Nationwide Mutual Fire Ins. Co.*, No. CV 990429984, 2000 WL 739606, *6, 2000 Conn. Super. LEXIS 1318 (Conn. Super. Ct. May 25, 2000) (IIED claim dismissed where "the facts of the present case amount to a disagreement between the

6

plaintiff and the defendants as to the amount of the loss"); *Farrah v. Allstate Ins. Co.*, No. CV 010342834S, 2003 WL 22206802, *2, 2003 Conn. Super. LEXIS 2508 (Conn. Super. Ct. Sept. 16, 2003) (IIED claim dismissed where complaint alleged that "Allstate Insurance Company deliberately and intentionally caused the Plaintiff Lynne Farrah, emotional upset" by violating every section of CUIPA, which allegations were not "allegation[s] of extreme or outrageous conduct").

Therefore, Plaintiff's IIED claim must be dismissed.

IV.   Conclusion

For the reasons stated above, Provident's Motion to Dismiss [Doc. # 22] is GRANTED. Count One, for breach of contract, remains for further disposition.

IT IS SO ORDERED.

    /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 7th day of July, 2010.